397 So.2d 373 (1981)
Harriet G. SITOMER, Appellant,
v.
Stephen J. SITOMER, Appellee.
No. 79-2320.
District Court of Appeal of Florida, Fourth District.
April 15, 1981.
Ray Sandstrom of Sandstrom & Haddad, Fort Lauderdale, for appellant.
*374 Michael Eric Christiansen, P.A., Fort Lauderdale, for appellee.
SHARP, Judge.
The wife appeals from the lower court's order upon the husband's Motion to Modify the Final Judgment and Exceptions of the husband to the Report of the General Master.
The wife moved for a contempt order on August 2, 1980, alleging noncompliance with the final judgment and arrearages of over $3,000.
The motion was referred to a General Master who filed her report on August 24th. The parties waived reporting of the hearing before the Master. The Master found that the husband had the ability to substantially comply and was in willful contempt. Along with her findings of fact, she made recommendations for payment and for incarceration for noncompliance within 20 days. The same day that the Master's report was filed, husband moved to modify final judgment alleging change of circumstance and filed exceptions to the Master's report realleging inability to pay.
The lower court's order is reversed in that the court should not have considered the husband's motion to modify when he was in arrears in alimony, child support and attorney's fees, was facing a contempt recommendation by the General Master, and was coming to court seeking relief with unclean hands. This is not to say that he could not allege illness or business reversal which changed his circumstances between the General Master's hearing and the Motion for Modification. The record in this case, however, shows that the husband merely re-argued his former contention of inability to pay since entry of final judgment.
Even though the parties waived a reporter at the General Master's hearing, and the Master made a factual determination that the husband had the ability to substantially comply with the final judgment, the court in its order determined that the husband did not have the financial ability to pay alimony.
It has long been the law in Florida that a trial judge may not reject a master's findings of fact unless the court concludes that the findings of fact are clearly erroneous. Moncrief v. Hall, 63 So.2d 640 (Fla. 1953); Hopping v. Lovejoy, 53 So.2d 704 (Fla. 1951); Harmon v. Harmon, 40 So.2d 209 (Fla. 1949). "Of course, the master's findings of fact would be clearly erroneous if the record should fail to contain evidence in support thereof which is both competent and substantial." Frank v. Frank, 75 So.2d 282, 285 (Fla. 1954). There is a significant distinction, however, between a master's findings of fact and his conclusions of law. The difference was discussed by the court in Bergh v. Bergh, 127 So.2d 481, 486 (Fla. 1st DCA), cert. denied, 133 So.2d 323 (Fla. 1961):
We do not construe the rule in Harmon to mean that even though the conclusions of law reached by a special master upon the facts established by the evidence may find support in accepted equitable principles, that such conclusions are binding upon the chancellor when under a different interpretation of the facts the chancellor may reach a contrary conclusion supported by established principles of law which in the exercise of his judicial discretion produces a more equitable solution to the issues posed for decision. The chancellor is an elected constitutional officer to whom the citizens of his circuit look, and upon whom they depend, for the settlement of their disputes. His training in and dedication to the law, and his experience in settling the rights of parties in a fair and impartial manner consistent with justice, far better qualify him to perform important judicial functions than does the training and experience of the average special master. It is the chancellor's decree which must be entered in the case and for which he is wholly responsible and accountable to those affected thereby. By his oath of office he is bound to see that the decree he enters in a cause approaches as closely as possible his conception of what is right and just under law. His judgment and *375 discretion in this regard cannot be circumscribed nor restrained by the conceptions or legal conclusions of his statutory agent, the special master. As said by the Supreme Court in United States Casualty Company [v. Maryland Casualty Company, Fla. 1951, 55 So.2d 741, 744], "The chancellor, of course, should give due consideration to the findings of facts made by a special master and should consider the many advantages which the master had in personally hearing and observing the witnesses * * * However, although the Chancellor may use the services of a special master (he is not required to do so) and receive from him his advisory findings and recommendations, the fact remains that it is the chancellor who under the law is charged with the duty and responsibility of making findings of facts and entering the final decree... ."
Applying these principles to the case at bar, we hold that the trial court was obligated to accept the master's findings of fact since no record existed from which it could be shown that the findings were clearly erroneous. A master's findings of fact are clothed with a presumption of correctness. Here, the parties' stipulation to waive the presence of a court reporter at the master's hearing had the practical effect of making the presumption of correctness irrebuttable. Consequently, the trial court erred when it failed to adopt the master's finding that the husband had the ability to comply with the court's prior order on alimony and child support.
While the court has greater latitude when it comes to accepting the master's recommended conclusions of law and proposed remedy (purge payment or incarceration), the court must draw conclusions which are consistent with, and supported by, the master's findings of fact. Again, in the case at bar, the only possible, reasonable conclusion was that the husband was in contempt of court. Since the court failed to reach this conclusion, we are compelled to reverse and remand with instructions for the trial court, exercising its sound discretion, to conduct further proceedings consistent with a finding of contempt.
MOORE and HURLEY, JJ., concur.